Argued and submitted December 18, 2001, affirmed on appeal; reversed and remanded for further proceedings on cross-appeal May 1, 2002

STATE ex rel Leroy T. FORMAN,
*Appellant - Cross-Respondent,*

*v.*

CLACKAMAS COUNTY,
*Respondent - Cross-Respondent,*

*and*

Lloyd MARBET,
*Intervenor-Respondent - Cross-Appellant.*

CCV98-03-550; A111100

45 P3d 491

Jeffrey M. Batchelor argued the cause for appellant - cross-respondent Leroy T. Forman. With him on the briefs were Markowitz, Herbold, Glade & Mehlhaf, P.C., Gary G. Linkous and Gary G. Linkous, P.C.

No appearance for respondent - cross-respondent Clackamas County.

Peggy Hennessy argued the cause for intervenor-respondent - cross-appellant. With her on the briefs was Reeves, Kahn & Eder.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

This appeal, supplemental appeal, and cross-appeal arise from a mandamus proceeding pursuant to *former* ORS 215.428.[1] Plaintiff-relator Leroy Forman sought a writ compelling Clackamas County to issue a conditional land use permit authorizing operation of a gravel mining pit in a residential farm/forest zone. Intervenor Lloyd Marbet, a neighbor, contested the issuance of the writ. The trial court purported to allow plaintiff-relator's motion for "judgment as a matter of law"[2] but, in doing so, specified certain conditions of approval that plaintiff-relator challenges. Thereafter, the court denied plaintiff-relator's petition for attorney fees. Plaintiff-relator appeals, arguing, *inter alia*, that imposition of the disputed conditions was improper and that the court erred in denying fees. Intervenor Marbet cross-appeals, arguing that the trial court erred in allowing the motion for judgment as a matter of law. As described below, we agree with intervenor that the trial court erred in granting plaintiff-relator's motion for judgment as a matter of law. Consequently, we reverse and remand for further proceedings.

Except as specifically noted, the following facts are undisputed. Plaintiff-relator owns a 24.63 acre parcel of land in Clackamas County. That property is located in a "Residential Farm/Forest 5-8 Acre District." Gravel mining is a permissive conditional use within that district. *See* Clackamas County Zoning and Development Ordinances (ZDO) § 309.05A.8. Intervenor lives on adjacent property, which includes wetlands.

---

[1] After plaintiff-relator filed this matter in the trial court, the legislature repealed ORS 215.428 and, essentially, reenacted that provision with substantial modifications by amending portions of ORS 215.427 and enacting ORS 215.429. Or Laws 1999, ch 393, § 2. Nothing in that repeal and modified reenactment is material to our analysis or disposition of any question in this case.

[2] Before the trial court, plaintiff-relator styled his motion as one for a "directed verdict." On appeal, he refers to it as a "motion for judgment as a matter of law." We have indicated that motions for "directed verdicts" generally are appropriate in jury trials, not bench trials. *See Turudic v. Stephens*, 149 Or App 437, 943 P2d 1110 (1997). Therefore, we conclude that the term "judgment as a matter of law" is the preferable term in this context.

In May 1996, plaintiff filed an application with Clackamas County seeking a conditional use permit authorizing a gravel mining operation on his property. On November 24, 1997, plaintiff-relator's application was deemed complete for purposes of triggering the 120-day approval limit specified in *former* ORS 215.428. In February 1998, county planning staff reviewed the application and recommended that it be denied. However, the staff report recommended that, if the reviewing hearings officer were to approve the application, the approval be conditioned upon satisfying 38 conditions directed towards mitigating environmental impacts of the proposed operation. On March 27, 1998, before the hearing officer acted on the staff recommendation, the statutory 120-day period expired.

On March 30, 1998, plaintiff-relator filed his petition for alternative writ of mandamus pursuant to *former* ORS 215.428. That statute provided, in pertinent part:

"(1) Except as provided in subsections (3) and (4) of this section, the governing body of a county or its designee shall take final action on an application for a permit, limited land use decision or zone change, including resolution of all appeals under ORS 215.422, within 120 days after the application is deemed complete.

"* * * * *

"(7) Except when an application requires an extension under subsection (4) of this section, if the governing body of the county or its designee does not take final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete:

"* * * * *

"(b) The applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designee to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the county comprehensive plan or land use regulations."

That petition alleged, in pertinent part, that plaintiff-relator's original and unconditioned (as of November 24, 1997) "application and proposed conditional use complies with all substantive provisions of the county's comprehensive plan and land use regulations." The petition sought a writ ordering the county to issue approval of that original, unconditioned application.

In April 1998, the county answered, asserting, in part, that approval of the application would violate substantive provisions of the county's comprehensive plan and its zoning and development ordinances. At the same time, Marbet successfully moved to intervene.

On June 1, 1998, representatives of the Oregon Department of Geology and Mineral Industries (DOGAMI) and the Oregon Water Resources Department (WRD) jointly sent a letter to the county, responding to the county's request that DOGAMI review reports from consultants regarding measures to address service water and ground water impacts of the proposed operation. That letter described certain possible measures DOGAMI and WRD would impose as conditions for the issuance of any mining operation permit for the site. For example, the letter provided:

"If this site receives land use approval and an application is filed with DOGAMI, a likely requirement will be characterization of the wetland areas to establish hydrologic baseline conditions. The DOGAMI permit would be written to protect the adjacent wetlands.

"* * * * *

"Mining is technically feasible at this site with respect to surface and ground water protection and final reclamation providing the permit is written to address these issues. Although adequate for the county application, the information presented regarding mine development in the conditional use permit application is somewhat sketchy and does not provide enough detail to meet DOGAMI application requirements for an Operating Permit. If a surface discharge of ground water from the mine is proposed that diverts water away from down gradient wetlands, monitoring of wetlands will probably be needed to insure protection during mining. Regardless, DOGAMI and WRD concludes, based on the information listed above and our experience at

other similar sites, that mining can be accomplished if properly planned and implemented.

"If an application is submitted to DOGAMI, depending on the plan feasibility and methods proposed to protect ground water and other natural resources, DOGAMI and WRD may place certain restrictions in the DOGAMI permit. These are not limited to, but may include, [describing putative mitigation measures]."

In early August 1998, the county wrote to plaintiff-relator saying that the county was willing to stipulate to approval of the conditional use application

"provided appropriate conditions of approval are imposed. These would include, in general, the conditions recommended in the February 26, 1998, Planning Staff Report, supplemented by additional recommendations in the June 1, 1998, letter from DOGAMI and WRD."

Intervenor did not join in the county's stipulation.

In November 1998, plaintiff-relator sought to amend the alternative writ of mandamus. Plaintiff-relator alleged, in part:

"The application and proposed conditional use complies with all substantive provisions of the county's comprehensive plan and land use regulations *provided the permit is issued in accordance with the conditions recommended in the February 26, 1998 Planning Staff Report as supplemented by the additional recommendations in the June 1, 1998 letter from DOGAMI and WRD.*" (Emphasis added.)

Plaintiff-relator sought approval of the conditional use application "subject to the conditions recommended in the February 26, 1998, Planning Staff Report as supplemented by the additional recommendations in the June 1, 1998, letter from DOGAMI and WRD." Thus, plaintiff-relator sought to have the amended writ compel approval of the application as conditioned by the 38 staff-recommended conditions plus the DOGAMI/WRD recommendations.

The county, in accordance with its earlier stipulation, filed an answer admitting plaintiff-relator's entitlement to issuance of the permit as so conditioned. Intervenor also answered, asserting that approval would violate the county's

comprehensive plan and various provisions of the zoning and development ordinance and further asserting, as an "alternative defense," that the plaintiff-relator "must rely upon the record as it existed at the time he filed his mandamus action, to support his allegation that the proposal satisfies the substantive provisions" of the county comprehensive plan and zoning and development ordinance. In that posture—with plaintiff-relator and intervenor as adversaries, and the county effectively on the sidelines—the matter proceeded to trial in February 2000.

Immediately before trial, intervenor filed an *in limine* motion that sought to limit "the evidence of Relator's 'application' to the application and supporting documentation, as submitted to Clackamas County on or before March 31, 1998, the date of the Alternative Writ of Mandamus." In support of that motion, intervenor suggested that the proper focus of relief pursuant to *former* ORS 215.428 was relator's application in the form that it was pending before local government on the date the 120-day statutory period expired:

> "Relator should not be allowed to modify or supplement the 'application' to achieve compliance with the applicable approval criteria in this mandamus proceeding because the supplemental information and modifications to the proposed operation changed the nature of the 'application.' This type of revised plan constitutes a new proposal which was not before the County, has not been subject to the land use approval process, and is not the same development application that was before the County on March 31, 1998.
>
> "* * * * *
>
> "The local jurisdiction, or Intervenors, in these kinds of proceedings cannot be expected to carry the burden to show noncompliance of any evolving project. This would require them to address a moving target or changes the goal posts. It is the 'application' which was before the County that is subject to review."

Thus, intervenor argued, plaintiff-relator was precluded from submitting any information substantiating that the proposed use would not violate the comprehensive plan or local land use laws if that information was not presented to

the county within the 120-day approval "window."[3] The trial court indicated that its tentative inclination was to deny the *in limine* motion:

> "It doesn't make sense to me that I would have—that I would not be able to consider how [plaintiff-relator] can comply with those regulations because it is my duty, as I understand the statute, to determine whether or not the relator can meet all the comprehensive plan and land use regulations. That's my feeling at this point."

The court emphasized, however, that its ruling was tentative and was subject to being revisited in context when or if plaintiff-relator presented evidence to rebut any showing that intervenor might make that the proposed operation would not comply with the comprehensive plan or local land use laws.

At the beginning of trial, the court determined that, because plaintiff-relator and the county had stipulated to the issuance of the permit with certain specified conditions, plaintiff-relator had made a *prima facie* case for issuance of the permit. Thus, it was incumbent on intervenor to present evidence showing that issuance of the permit would, nevertheless, violate the comprehensive plan or local land use regulations. *See former* ORS 215.428(7)(b).

Intervenor then presented testimony from his only witness, Michael Purser. Purser, a consulting hydrologist, testified extensively concerning alleged impacts from the

---

[3] In oral argument before the trial court, intervenor's counsel explained that intervenor's position was that the judge was sitting, effectively, as a "hearing officer" and was limited, in her consideration, to those matters that would have been properly before the hearings officer at the time the 120-day period expired:

> "We are removed two years later, but in essence instead of it being the County hearings officer making the decision, it's you, but it should be based on the same information that the County hearings officer would have had in front of him or her at the time, and that would be the evidence submitted at the time, not anything else."

Intervenor's counsel expressly acknowledged, "[w]e don't have any objection to the Court relying on the Staff Report [which included the 38 conditions] that was prepared. It's [additional] information submitted or to be submitted by the applicant to bolster the application that we think is the problem."

gravel mining operation, including erosion from the surrounding berm and detriment to the adjacent wetlands property on which intervenor lived. After Purser had testified at length, plaintiff-relator's attorney, who had originally stated that he had no objection to Purser's qualification as an expert witness, objected that Purser was violating several laws—and, indeed, had already committed several Class A misdemeanors[4]—by testifying on matters pertaining to geology and engineering. Counsel contended that, because Purser was not a registered geologist or licensed engineer, his testimony constituted the unauthorized practice of those professions. After protracted colloquy, the court overruled the objection:

> "I think the statutes are designed for purposes other than what is going on here. I don't think that this testimony falls within insuring—for purposes of insuring compliance. It may go to the weight of this gentlemen's testimony and whether I find that it's sufficient to defeat the writ on that basis * * *."

After Purser's testimony, intervenor rested his case. Plaintiff-relator then moved for a judgment as a matter of law on the ground that intervenor's evidence did not demonstrate that the conditions to which plaintiff-relator and the county had stipulated were inadequate to insure compliance with the comprehensive plan and the county's development and zoning ordinance. Initially, the court indicated that it was inclined to deny the motion:

> "[Plaintiff-relator's counsel:]   What the Court has to look out for, if they are to try to do this in the correct way, is the Court allowed to put any conditions on the permit that are allowed by the ordinances and allowed by the comprehensive plan. The burden of proof isn't on us to show you what those further conditions are.

> "[The Court:]   However, if you don't give them to me, I have to deny your writ.

> "[Plaintiff-relator's counsel:]   But what we've done is we've said here's thirty-eight conditions.

---

[4] Plaintiff-relator's counsel invoked ORS 672.045(1) and ORS 672.991(1) (pertaining to unauthorized practice of engineering); and ORS 672.505, ORS 672.525, and ORS 672.991(3) (pertaining to unregistered practice of geology).

"[The Court:]    And I'm saying they don't go far enough, they are not specific enough, and I'm concerned that they put the responsibility for compliance to the comprehensive plan or zoning issues, as well as environmental issues, defer them and put them in the hands of other agencies, even if it's the County."

The parties then debated numerous specific conditions, including how diminution of groundwater caused by the mining operation would affect the wetlands. The court stated:

"I am concerned about the wetlands issue. The erosion issue I think can much more easily be addressed because the berm, it appears from what I've heard—and I believe, again, that the only evidence I can rely upon is the evidence presented by the intervenors. Perhaps if you move forward, you will present me with some other options—it appears that this berm is not adequate as it was designed or recommended for design in the original application. That to me seems to be something that can be rectified more easily than the other issue that I have about the diminution of water to the wetlands.

"So that is where I'm concerned and would like to fashion something or deny the writ in the alternative."

In response, plaintiff-relator's attorney argued that the agreed-upon conditions (*i.e.*, the 38 staff-recommended conditions, plus matters described in the DOGAMI/WRD letter) adequately addressed the court's concerns. Counsel then asked the court if it was finding that intervenor had carried his burden of proof. The court responded:

"All I'm saying is a prima facie case has been made by Mr. Purser coming in and saying if you allow this project to go forward the way it is laid out here, there will be problems with—potential problems with erosion, as well as the wetlands. That's an area of concern.

"You have fallen back on the thirty-eight conditions that—and I would love to just say 'Sure. That sounds great to me. Let's just adopt the thirty-eight conditions, put the burden onto the design review process, put the burden on both Mr. Forman, as well as these other agencies, DOGAMI or otherwise, to make sure that all of these things are done

to protect the wetlands and to make sure that reclamation occurs the way it's supposed to.'

"That problem has then been raised by the intervenors in saying 'Judge, you can't do that. You can't simply say these conditions are adequate because they are conclusory.'"

Shortly thereafter, the court recessed in order to review the materials submitted by the parties and give some thought to the legal issues.

When the court reconvened, it announced that it was allowing the motion:

"Let me begin by saying that I am going to grant the relator's motion for directed verdict at this point, at least for a judgment in favor of the relator. The reasons are that I believe that[,] even though a *prima facie* case was made that the application as it was originally written and submitted by the relator would have violated substantive provisions of the land use regulations and comprehensive plan, that with the inclusion and adoption of additional conditions, this is going to be a feasible plan that will substantively not violate or won't require that there be a finding of any violations in the future."

The court emphasized: "Again, I don't disagree that there needs to be some conditions here, but I don't think they need to be as specific and as direct as the intervenor argues they need to be."

The court then discussed numerous conditions to which plaintiff-relator and the county agreed, focusing on the wetlands issue. The court concluded:

"In any event, it's my opinion that relying on the conditions expressed in those documents and from those agencies [the county's 38 conditions and the DOGAMI and WRD recommendations] that those will result in compliance with the County's comprehensive plan and land use regulations and that I couldn't do a better job. * * * I believe that it's appropriate to set those conditions out in this judgment in favor of the—I guess it's not a judgment, but the writ that I'm granting and that the conditions need to be expressed as well as they can be.

"* * * * *

"I hoped from the get-go that the parties would be in a better position and, therefore, would get together to put these conditions into place and come up with something, and that was attempted and failed.

"I guess I still believe that you folks are in a better position to put these conditions into the final judgment and order requiring issuance of this conditional use permit.

"I am also mindful of the fact that you weren't able to do that, *so what I will be doing is asking, first of all, the prevailing party here, Mr. Forman and his attorney, to submit proposed conditions and then ask the intervenor, Mr. Marbet and his counsel, to submit comments or proposals for conditions, and then I will ultimately incorporate those that I believe are appropriate on this particular site or to this particular site.*" (Emphasis added.)

No party questioned whether, or how, the court could ostensibly allow a "directed verdict," while at the same time reserving the ability to incorporate "appropriate" conditions of approval in the peremptory writ. In particular, plaintiff-relator did not tell the trial court that, having granted plaintiff-relator's motion, the court was limited to granting the relief on the conditions specified in the amended writ and could not require additional or different conditions of approval.

Ultimately, in June 2000, the trial court issued a peremptory writ of mandamus that required the county to issue the permit "in accordance with the conditions recommended in the February 26, 1998 planning staff report and the additional recommendations in the June 1, 1998 letter from DOGAMI and WRD, *as modified and supplemented by Intervenor.*" (Emphasis added.) That is, the peremptory writ was not limited merely to the 38 county staff-approved conditions and matters addressed in the DOGAMI/WRD letter but, instead, also included material modifications of the original 38 conditions, as well as several new and additional conditions.

Plaintiff-relator appealed, and intervenor cross-appealed. Thereafter, the trial court denied plaintiff-relator's petitioner for attorney fees pursuant to ORS 34.210(2). Plaintiff-relator then filed an amended appeal, ORAP 2.20,

asserting that the denial of fees did not comport with *State ex rel Aspen Group v. Washington County*, 150 Or App 371, 378, 946 P2d 347 (1997), *rev den* 327 Or 82 (1998).

On appeal, plaintiff-relator's assignments of error frame three questions: (1) Having granted plaintiff-relator's motion for judgment as a matter of law, did the trial court err in ultimately issuing a peremptory writ that included conditions of approval that differed materially from those specified in the amended alternative writ? (2) Even if the trial court could impose additional or varying conditions of approval, were certain conditions specified in the peremptory writ unsupported by the record or impermissible as a matter of law? (3) Did the trial court err in permitting Purser to testify with respect to certain matters?

Conversely, intervenor's cross-appeal asserts that the trial court erred in allowing judgment as a matter of law for either of two alternative reasons. First, intervenor asserts that the trial court based its ruling on the wrong "application." Intervenor contends that the proper referent for the motion was plaintiff-relator's unconditioned application, as it was pending before the county on March 28, 1998—and not, as styled in the amended alternative writ, the application as qualified by the 38 staff-approved conditions when read in the context of the DOGAMI/WRD letter. Intervenor reasons that, regardless of whether the latter complies with the comprehensive plan and local land use regulations, it is beyond dispute that the former did not—and, thus, that plaintiff-relator was not entitled to judgment as a matter of law. Second, intervenor asserts that, even if the "conditioned" application was the proper object of the motion for judgment as a matter of law, the allowance of that motion was still erroneous because Purser's testimony raised disputed issues of fact relating to whether the proposed operation would violate local land use regulations.

■ The arguments on appeal and on cross-appeal, are, to some degree, inextricably intertwined. For clarity of analysis, we begin with the cross-appeal. Intervenor's first argument—that, in ruling on the motion for judgment as a matter of law, the court was limited to considering the lawfulness of the application pending as of March 28, 1998—is

premised on intervenor's view of the proper relationship of the interplay between the final two sentences of *former* ORS 215.428(7)(b).[5] In particular, intervenor asserts:

"While it is appropriate for the trial court to impose conditions of approval under ORS 215.428(7)(b), [plaintiff-relator] should not be allowed to modify or supplement the 'application' to achieve compliance with the applicable approval criteria in this mandamus action, for purposes of considering whether a *prima facie* case of violation has been presented. The supplemental information and modifications of the proposed operation changed the nature of the pending 'application.' "

We do not address the merits of that argument, because it was not preserved for our review. Specifically, in opposing the motion for judgment as a matter of law, intervenor never raised such an argument. Moreover, the only argument that intervenor did make in the trial court that related to the proper scope and application of *former* ORS 215.428(7)(b) was in the context of intervenor's written motion *in limine*. *See* 181 Or App at 178-79. However, even in that context, intervenor's counsel's subsequent oral explication of the *in limine* motion to the trial court indicated that that motion went merely to *evidence generated* after March 28, 1998, and not to the contours of the "application" presented for the court's review in mandamus. *Id.* at n 4. In all events, intervenor does not assign error to the denial of his *in limine* motion.

■ Intervenor's second argument is, however, dispositive. As described below, we agree with intervenor that, viewed most favorably to intervenor, Purser's testimony raised a factual issue that issuance of the permit with the conditions agreed upon by plaintiff-relator and the county "would violate a substantive provision of the county comprehensive plan or land use regulations[.]" *Former* ORS 215.428(7)(b). Indeed, implicit in the trial court's material

---

[5] Those two sentences provided:

"The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the county comprehensive plan or land use regulations."

modification and imposition of additional conditions is its determination that Purser's testimony substantiated concerns inadequately addressed by the conditions of approval specified in the amended alternative writ. Consequently, the trial court necessarily erred in granting the motion for judgment as a matter of law.[6]

Before addressing the substance of Purser's testimony, we consider the threshold question of whether the trial court erred in denying plaintiff-relator's motion to strike and preclude Purser's testimony to the extent that that testimony pertained to geologic and engineering matters. As noted, plaintiff-relator contended before the trial court that certain aspects of Purser's testimony violated statutory criminal prohibitions. *See* 181 Or App at 179-80. We have reviewed the transcript of Purser's testimony and agree with the trial court that the matters about which Purser testified were within his professional competence. The merits of that challenge deserve no further discussion.[7]

We turn, then, to whether Purser's testimony precluded judgment as a matter of law that plaintiff-relator was

---

[6] The trial court's ambivalence in that regard is evident from its statements quoted at length above. For example, the court explicitly stated that it was granting plaintiff-relator's motion for a "directed verdict" and that inclusion of the conditions agreed upon by plaintiff-relator and the county would "result in compliance with the County's comprehensive plan and land use regulations and * * * I couldn't do a better job." On the other hand, the court made a number of statements indicating that the conditions agreed upon by plaintiff-relator and the county "don't go far enough" and "are not specific enough." The court went on to state that, in crafting the writ, it would consider the conditions proposed by intervenor as well as those proposed by plaintiff-relator and the county and would "ultimately incorporate those that I believe are appropriate[.]"

[7] Unfortunately, the *manner* in which plaintiff-relator presented that challenge on appeal does require further comment. Plaintiff-relator's brief insinuates that the trial judge was intemperate in her discussions with counsel on this issue and that, by overruling plaintiff-relator's objection, the court "implicitly endorsed" the "flaunt[ing of] the state's criminal laws in open court [sic]."

Those accusations are unfounded. Based on our review of the transcript, the trial judge demonstrated considerable restraint in the face of counsel's persistent refusal to move on after the court had made its ruling. Significantly, plaintiff-relator's brief, while quoting selectively from the transcript, neglects to acknowledge that trial counsel ultimately apologized to the trial judge for his conduct.

*Ad hominem* insinuations about a trial judge's good faith in the performance of his or her duties are intolerable. Such "advocacy" has no place in Oregon appellate practice.

entitled to issuance of a permit on the conditions as stipulated with the county. We begin with the question of off-site erosion and the significance of Purser's testimony on that question.

Two Clackamas County ordinance provisions are particularly pertinent to consideration of off-site erosion. First, ZDO 818.03(K) provides that, as a general application requirement, an application for permit for surface mining must include "[a]n erosion control plan detailing ground cover plantings and other methods of controlling erosion of surfaces affected by the mining." Second, ZDO 818.04(E), pertaining to "general operation requirements and standards" for surface mining operations, provides:

> "Erosion Control: Sedimentation or erosion resulting from the mining operation shall not adversely affect the quality of any body of water, as determined on the basis of standards established by the State Department of Environmental Quality and the State Department of Geology and Mineral Industries. *Erosion resulting from the mining operation shall be contained within the permit area.*" (Emphasis added.)

Plaintiff-relator's application included information pertaining to those requirements. With respect to section ZDO 818.03(K), the application described the following control plan:

> "A.  The Berm placed around the north and west perimeter of the property shall have a temporary SEDIMENT FENCE until re-vegetation has been accomplished.
>
> "B.  Hydro mulch will be applied (100 lbs per acre minimum) with annual Ryegrass (40% by weight) and Turf-type Fescue (60% by weight).
>
> "C.  THUJA-ARBORVITAE will be planted along the north and west property lines to assist in the screening of the property from the surrounding areas.
>
> "D.  Straw bales and/or silt fences will be used where storm runoff is active."

With respect to ZDO 818.04(E) pertaining to erosion control, the application stated: "All mine operations take place 27 feet

below grade. There is little possibility for contamination off-site. Establishing vegetation on the berm is discussed [in] 818.03(D)."[8]

The 38 subsequently generated staff-recommended conditions of approval included the following condition:

"Erosion control devices like sediment fences and hay bales shall be used to contain any erosion during construction of the perimeter berm[,] stripping of the overburden and other activities associated with this mining operation. These sediment containment and erosion control devices shall be acceptable to County Department of Utilities and/or Department of Environmental Quality."[9]

At trial, Purser testified extensively concerning the inadequacy of the four erosion control measures identified in the application and incorporated at least in part (the use of sediment fences and hay bales) in the staff-recommended conditions. He concluded:

"Q. [By intervenor's counsel] Based on your review of the application, your familiarity with the site, your experience and your knowledge of the four measures we just talked about that would be imposed as part of the plan, do you believe that there would be erosion off-site?

"A. [By Mr. Purser] Yes, I do."

On cross-appeal, intervenor contends that Purser's testimony in that regard raised a factual question as to whether the proposed operation, even as conditioned in the amended alternative writ, would result in off-site erosion, in violation of ZDO 818.04(E). Plaintiff-relator responds that Purser's testimony related only to the application's discussion of ZDO 818.03(K) and did not address plaintiff-relator's

---

[8] ZDO 818.03(D) requires submission of a site plan of the operation, including a description of excavation areas. That portion of plaintiff-relator's application cross-referenced, in turn, the application's description of the "erosion control plan."

[9] The peremptory writ ultimately included a condition substantially similar to that staff condition:

"Erosion control devices like sediment, fences and hay bales shall prevent any sediment or soil from leaving the subject property. These erosion control devices and activities shall be acceptable to the County Department of Utilities, the Department of Environmental Quality, and Department of Geology and Minerals Industries."

submissions with respect to ZDO 818.04(E). Plaintiff-relator further argues that, regardless of the abstract insufficiency of various control measures, the conditioned application is sufficient because it specifies that any such measures "shall be acceptable to the County Department of Utilities and/or Department of Environmental Quality."

Intervenor rejoins, and we agree, that plaintiff-relator's characterization of Purser's testimony—or, at least, of its implications—is artificially narrow. While it is true that Purser's testimony focused on the application's submission in response to ZDO 818.03(K), it is also apparent that there is a necessary overlap and interrelationship between ZDO 818.03(K) and ZDO 818.04(E). Indeed, the application's submission with respect to ZDO 818.04(E) cross-references its discussion of ZDO 818.03(D) which, in turn, refers to the application's response regarding ZDO 818.03(E). *See* 181 Or App at 187-88. In sum, Purser's testimony that the proposed control measures would be inadequate to limit off-site erosion raises a disputed factual issue as to whether erosion from plaintiff-relator's putative mining operation would be contained on site.[10]

We thus conclude that Purser's testimony regarding off-site erosion precluded the allowance of judgment as a matter of law. Given our conclusion in that regard, we need not, and do not, address intervenor's alternative contention that Purser's testimony concerning wetlands impacts also made a *prima facie* showing that the application, even as conditioned, violated local land use regulations. The trial court erred in granting plaintiff-relator's motion for judgment as a matter of law.

Our holding on the cross-appeal disposes of the remaining issues on appeal. Plaintiff-relator's first assignment of error, which challenges the trial court's imposition of

---

[10] Plaintiff-relator's contention that the requirement of governmental approval essentially ensures the efficacy of containment measures is similarly unavailing. Plaintiff-relator identifies no standard governing the Department of Utilities or the Department of Environmental Quality that approximates the rigor of ZDO 818.04(E).

materially different or additional conditions in the peremptory writ, necessarily presumes that the allowance of judgment as a matter of law was proper. Similarly, our reversal of the judgment as a matter of law obviates consideration of plaintiff-relator's second assignment of error, which more narrowly challenges certain conditions as being unsupported by the evidence or contrary to law. Because it is unclear which conditions, if any, the trial court may impose on remand after hearing the balance of the parties' evidence, we decline to express any view as to the abstract propriety of any putative condition of approval. As described above, *see* 181 Or App at 186, we reject plaintiff-relator's third and final assignment of error, which pertained to the admissibility of certain aspects of Purser's testimony. Because plaintiff-relator failed to prevail on any of his assignments of error on appeal, we affirm on appeal.

Finally, our reversal of the judgment as a matter of law in favor of plaintiff-relator obviates any need to address plaintiff-relator's challenge to the trial court's denial of attorney fees.

Affirmed on appeal; reversed and remanded for further proceedings on cross-appeal.